STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

CA 03-911


HURLEY STATE BANK

VERSUS

SHARON PICKENS


**********

APPEAL FROM THE
THIRTY-SIXTH JUDICIAL DISTRICT COURT
PARISH OF BEAUREGARD, NO. C-2001-0381 "B"
HONORABLE HERMAN I. STEWART, JR., DISTRICT JUDGE

**********

MARC T. AMY
JUDGE

**********

Court composed of John D. Saunders, Marc T. Amy, and Billy Howard Ezell, Judges.

**AFFIRMED.**

Gregory M. Eaton
Post Office Box 3001
Baton Rouge, LA 70821-3001
(225) 378-3104
COUNSEL FOR PLAINTIFF/APPELLANT:
    Hurley State Bank

Charles A. "Sam" Jones, III
Post Office Box 995
105 North Stewart Street
DeRidder, LA 70634-0995
(337) 463-5532
COUNSEL FOR DEFENDANT/APPELLEE:
    Sharon Pickens

AMY, Judge.

Plaintiff bank filed a collection suit against the defendant, claiming that certain amounts were due under an open-account agreement. The defendant asserted an affirmative defense, arguing that she had entered into a purchase agreement with the plaintiff and had not consented to an open account. The trial court dismissed the plaintiff's suit for lack of evidence of such an account. The plaintiff appeals. We affirm the trial court's ruling.

**Factual and Procedural Background**

The instant matter arose from the credit purchase of a computer. Sharon Pickens, the defendant herein, testified at trial that she had responded to a television advertisement offering computers through Value America. Shortly after completing the paperwork for the purchase of the computer, a dispute arose as to billing, and Ms. Pickens ultimately ceased making payments. Hurley State Bank, Value America's financing agent and the plaintiff herein, filed a collection suit against Ms. Pickens, seeking repayment of the balance owed on what it classified as an open account, plus interest, attorney's fees, and costs. During the pre-trial phase, the Bank's motion for summary judgment was denied. A trial was then held in the matter, culminating in the dismissal of the Bank's suit. In his oral reasons for judgment, the trial judge pointed out that although the Bank's case rested on its classification of the debt as an open account, no evidence had been introduced that proved that the Bank and Ms. Pickens had entered into this particular type of contract. The Bank had introduced evidence relevant only to an open account, and, the trial judge noted, this evidence was insufficient to support a favorable judgment where the existence of such an agreement had not been established.

Hurley State Bank contests the dismissal of its suit, asserting two assignments of error on appeal:

1. The trial court erred in determining that a *prima facie* case was not made regarding the existence of an open account, and

2. The trial court erred in ruling that the Bank did not prove its case by a preponderance of the evidence.

For the following reasons, we affirm.

## Discussion

Because the Bank's assignments of error are interrelated, we address them together. Hurley State Bank first argues that, according to the principles outlined in the first circuit's decision in *Jacobs Chiropractic Clinic v. Holloway*, 589 So.2d 31 (La.App. 1 Cir. 1991), a *prima facie* case of an open account is established through the production of business records. The Bank argues that once these records have been introduced into evidence, the burden of proof shifts to the defendant to prove that the records are inaccurate or that she is entitled to credits on the account. The Bank asserts that business records, admissible herein under La.Code Evid. art. 803 and La.R.S. 13:3733, are given great evidentiary weight. The Bank further cites *Williams v. Bulk Transp., Inc.*, 266 So.2d 472 (La.App. 4 Cir. 1972), in support of its contention that when testimony conflicts, the trial court should turn to physical evidence to establish the factual circumstances of the case. The Bank further points out that Ms. Pickens admitted that she signed a contract, and pursuant to *Bank of Louisiana v. Berry*, 94-576 (La.App. 5 Cir. 12/14/94), 648 So.2d 991, this contract was perfected when she used the card. In sum, the Bank contends that it introduced business records in this matter, and, as such, it made its *prima facie* case against Ms. Pickens.

The Bank further asserts that the trial court erred in determining that the Bank did not prove its case against Ms. Pickens by a preponderance of the evidence. The

Bank argues that testimony supported by documentation is afforded greater weight than unsupported testimony and, moreover, the weight given to credible testimony supported by documentation is greater still, citing the fourth circuit's decision in *Williams*, 266 So.2d 472. Ms. Pickens produced no documentary evidence, the Bank points out, and she testified at trial that she signed a contract. According to *American Bank v. Saxena*, 553 So.2d 836 (La.1989), the Bank argues, Ms. Pickens's unsupported testimony, coupled with the admission that she signed a contract, is insufficient to rebut the Bank's case. The Bank also points out that a party faced with a motion for summary judgment cannot prevail based solely on general denials; instead, documentation is needed for adequate opposition. The Bank likewise insists that Ms. Pickens's testimony to the effect that she signed a contract amounts to a judicial confession of the debt, citing La.Civ.Code art. 1853[1] and *Krepps v. Hindelang*, 97-980, 97-1034 (La.App. 5 Cir. 4/15/98), 713 So.2d 519. The Bank argues that because it produced business records pertaining to the debt, along with the deposition of its records custodian, and because Ms. Pickens testified that she had signed a contract, the Bank proved its case by a preponderance of the evidence, and the trial judge manifestly erred in ruling to the contrary. We disagree.

In order to recover in an action on an open account, a creditor has the burden of proving that the debtor agreed to an open-account arrangement. *Service Steel and Pipe, Inc. v. Guinn's Trailer Sales, Inc.*, 37,291 (La.App. 2 Cir. 6/25/03), 850 So.2d 902. A panel of this court has previously defined an open account as "an account in

---

[1]Louisiana Civil Code Article 1853, entitled "Judicial confession," provides as follows: "A judicial confession is a declaration made by a party in a judicial proceeding. That confession constitutes full proof against the party who made it. A judicial confession is indivisible and it may be revoked only on the ground of error of fact."

which a line of credit is running and is open to future modification because of expectations of prospective business dealings." *Tyler v. Haynes*, 99-1921, p. 5 (La.App. 3 Cir. 5/3/00), 760 So.2d 559, 563. Moreover, a defining characteristic of an open account is that "[s]ervices are recurrently granted over a period of time." *Id*. In *Tyler*, the following factors were listed as indicative of the existence of an open-account agreement between two parties:

1. Whether there were other business transactions between the parties;
2. Whether a line of credit was extended by one party to the other;
3. Whether there are running or current dealings;  and
4. Whether there are expectations of other dealings.

*Id*. at 563, *citing Herb's Mach. Shop, Inc. v. John Mecom Co.*, 426 So.2d 762 (La.App. 3 Cir.), *writ denied*, 430 So.2d 98 (La.1983). We examine the trial court's findings of fact in this collection suit according to the manifest-error/clearly-wrong standard. *Wooldridge Production Co., Ltd. v. Goldstream Corp.*, 36,373 (La.App. 2 Cir. 9/20/02), 827 So.2d 1211.

At trial, the Bank argued that Ms. Pickens had entered into an open-account agreement with Value America, for whom Hurley State Bank was a financing agent. The Bank offered various business records, resembling credit-card statements, that it had issued to Ms. Pickens, along with the deposition of its business records custodian. The Bank also argued that it had sent interrogatories to Ms. Pickens and  that Ms. Pickens responded that she had, indeed, signed a contract.  The Bank then rested.

The record reflects that Ms. Pickens testified as to her understanding of what had happened.  Ms. Pickens explained that after seeing Value America's commercial for computers on television, she called the number provided on-screen and arranged for the purchase of one of said computers.  Ms. Pickens recalled that she entered into a written purchase agreement with Value America that required monthly payments of

4

$46; however, neither she nor the Bank had a copy of this contract. The record reflects that the only evidence pertaining to this transaction was a document containing credit terms that Ms. Pickens did not sign.

Ms. Pickens further testified that after she received the computer, she had to call Value America to request her first bill. Ms. Pickens explained that it was commonplace for her to receive bills from Value America after their respective due dates, and, as a result, these bills would often reflect late fees from previous months. The amount due gradually increased from $46 per month, as originally agreed, to $57. Ms. Pickens noted that she called Value America on several occasions with respect to billing, and eventually, she told them that the "arrangement was not working out, that every time [she] turned around, they were making [her] pay more and that [she] no longer would like to have this computer or … do business." She testified that she subsequently ceased making payments because the bills were never timely sent to her. Ms. Pickens further testified that she never applied for a credit card with Value America, never received a credit card, and never signed anything that would allow increases in the monthly amount payable.

The record indicates that during the proceedings, the trial judge inquired whether the suit involved an open account or a closed account, to which counsel for the Bank responded, "I believe it's just for the sale of a computer." The following exchange is noteworthy, as it later formed the basis of the trial judge's reasoning:

THE COURT:

That's what I'm saying; this is not a credit card, open-end financing, is it?

MR. BOURGEOIS [counsel for Hurley State Bank]:

I believe it was a credit card with Value America that was used to purchase the computer.

THE COURT:

There was a credit card involved?

MR. BOURGEOIS:

That's my belief.

THE COURT:

Or was it just a single credit purchase that was a closed-end transaction?

MR. BOURGEOIS:

Well, I think it was a single credit purchase of the computer that was financed by Hurley. But I believe – We're of the impression –

THE COURT:

What I'm asking you is if the citations that you're giving me that pertain to an open account, are they applicable to this case –

MR. BOURGEOIS:

Yes, sir.

THE COURT:

And why are they applicable?

MR. BOURGEOIS:

Because we believe that it's the same or we believe that the law states that it is the same type of account –

THE COURT:

Open account or a closed –

MR. BOURGEOIS:

Yes, sir. It's really a credit – The two types are a credit versus a note, and this isn't a note. You know, a credit card purchase, even though it's for $2,000 for the purchase of a computer.

THE COURT:

Well, I understand there's credit card purchases; but nobody's introduced any credit card in this case, have they?

MR. BOURGEOIS:

No, sir.

THE COURT:

Okay. So we're talking about credit cards, we're talking about open accounts. But that's not what we're dealing with here; is that right?

MR. BOURGEOIS:

Well, it's – I believe the matter really involves a Value America charge card or charge account. Charge account.

THE COURT:

There's a charge account that apparently is not an open-end account. We're talking about a single-purchase contract, aren't we?

6

MR. BOURGEOIS:

In this case I believe it was only a single purchase was [sic] made.

THE COURT:

Well, that's all we're talking about is in this case. In other words, whatever your client does with other people or whether they have credit cards outstanding with other people hasn't got anything to do with this case, right?

MR. BOURGEOIS:

Well, I believe that if Ms. Pickens had chosen to purchase other things through Value America, it could have been done through this account.

THE COURT:

Had she been given a credit card?

MR. BOURGEOIS:

I don't know if she actually received a credit card or it was over the phone. . . .

At the conclusion of the trial, the trial judge noted in his oral reasons for judgment that although the parties recognized that Ms. Pickens and Value America had entered into a purchase agreement, no one had a copy of this agreement, and the Bank could not explain how or when revolving-credit terms began to apply. The trial judge pointed out that the Bank could not unilaterally transform a purchase agreement into a revolving-credit account and that Ms. Pickens would have had to approve such action. Because the Bank had not proven that an open account had been established, then the burden of proof discussed in *Jacobs Chiropractic*, 589 So.2d 31–*viz.*, an affidavit of the business records custodian and an itemization of relevant business records—was not applicable, and the Bank had failed to prove its case.

The record reflects that Ms. Pickens's statements unequivocally expressed her intent to enter into only one transaction with Value America. There were no prior transactions between the parties, and there were no future transactions contemplated. Hurley State Bank admitted at trial that Value America and Ms. Pickens had entered into a single transaction, for the purchase of the computer, as provided in the excerpt above. According to *Tyler*, 760 So.2d 559, discussed above, the party who wishes to

7

sue on an open account must prove the existence of the open-account agreement. Here, the Bank had the burden of proving that Value America and Ms. Pickens had agreed upon an open-account arrangement, and the record is devoid of any evidence to this effect. The Bank could not produce any contracts between the two, and it could not produce any credit cards issued to Ms. Pickens that would support its claim that a revolving line of credit was extended to her. In light of the burden of proof in an open-account claim as set forth in *Tyler*, and considering the absence of supporting evidence in the record, we find that the trial judge was neither manifestly erroneous nor clearly wrong in dismissing Hurley State Bank's suit.

## DECREE

For the foregoing reasons, the judgment dismissing the plaintiff's suit is affirmed. All costs of this proceeding are assigned to the plaintiff-appellant, Hurley State Bank.

**AFFIRMED.**